PRESENTER vs. GUIDEWIRE Mr. Jakes Good morning, may it please the Court. We're here this morning on an issue of patent-eligible subject matter under Section 101. And in particular, whether the computer system in this 284 patent is merely an abstract idea. The Court has framed the issue in... What's that mean? Well, Your Honor, I can only tell you what the cases have said in applying whether something is an abstract idea. Namely, it has to be manifest, it has to be quite obvious that it's abstract. The only reasonable interpretation is that the invention is directed to a disembodied concept or a fundamental truth. But you haven't told me what's abstract yet. You're just telling me it's going to be very abstract. Well, that doesn't help the Court much. What's very? What's manifest? What's all of these things that you suggest? Your Honor, I don't have a definition of what is abstract. What I can tell you is... How can we apply the law if we don't have a standard? I think at least for this case, what you can do is say these claims and this invention is not abstract. That's the issue in front of us. Well, you had method claims there which were held not to be patent eligible. You didn't appeal those. That's right. The system claims are quite similar. Why aren't they there for? Why isn't there a waiver? Your Honor, two reasons. One is that the claims are not that similar. There's not a one-for-one correspondence as you see in some cases where it's merely a change in the preamble and a change in the verb form. That is not this case. There are quite a number of differences in the claims. For example, the Claim 8 called for an event processor that interacts with an insurance transaction database. Now, the Claim 1 is different. It says the event processor is triggered by application events associated with a change in the information. That's much more concrete and much more specific. And it describes a software module that is triggered by events. That's not something a human could do, for example. What can humans do then? Your Honor, as far as I know, a human can't be triggered by software and can't be triggered by electronic change in a database. No, but the actions that are described in the claims, I mean, it seems to me that as a practical matter, I'm not sure they can be performed entirely in the human's mind. Basically, aren't you just transferring information from one source to another? I don't think that's an accurate characterization. If you look at the claims, it calls for very specific things such as an insurance transaction database. That's an electronic database. That's not something a human stores in their head. A task library database, also an electronic database. No, but a filing cabinet can hold a database, just a steel filing cabinet. That's true, Your Honor. But these are, and the court below recognized, they are electronic databases. Now, you have two other aspects to that. You have a specific client-server architecture, which has a client component, which could be a personal computer. You have the server component. Weren't all these steps done pre-computer anyway, either manually or intellectually by insurance people? Your Honor, I don't think that's really true either. You have, as I was saying in the server component, you have an event processor, a task processor, a task assistant. These are software modules, and they don't model strictly the way a human would go about these insurance claim handling. It's a computerized system that takes this information. It's structured in a particular way. What do computers do? Don't computers just calculate? At times, that's true. Don't they do mental steps faster than we could? That is one thing that they can do, but it's not the only. Can they do it faster, more reliably, with more automaticity, with more speed, with no chance for human error? Yes, a computer can do all of those things. Are those improvements? They can be, yes. Are you saying that if you can do a task function faster, that that's an improvement, that's an invention? It depends on how it's done. And if it's an application of a specific way to do that function, yes, it could be. Or is all that obvious once the idea of a computer and the knowledge of programming exists? I don't think that's true, Your Honor. I believe the computer industry, there are some things that are not obvious, and it's not merely mimicking human action. Of course, we'd need proof of obviousness, wouldn't we? We'd need some kind of analysis of secondary considerations. We'd need some kind of analysis of prior art. That's right. One of the things about this particular patent and this program, it does exist in the software industry, which is a huge industry. And this particular industry is directed to helping insurance companies process their claims better. It's not an insurance, it's not like offering insurance, for example, which might be an abstract idea. If this is abstract, is all software abstract? Well, it would come pretty close. I don't want to be the voice of doom, but if this type of patent was held to be unpatentably abstract, it gets pretty close to that. We have it in the record there. This is fairly exemplary of the type of software patents that are out there. It uses recognized software components, such as a client-server architecture. It has some novel components, like an event processor, a task engine, a task assistant. What does the CLS case do for you? Well, the CLS case, I think, does frame the question in a way that's very helpful to us, saying that the only reasonable interpretation has to be that this is a fundamental truth or a disembodied concept. And I'd say this invention is far from that. I don't even know what the fundamental truth or disembodied concept would be. It's directed to making claims processing more efficient by generating tasks that then a claims handler can execute. What does the Bancorp case do to you? Well, the Bancorp case, I think, is distinguishable. I think, as Your Honor's questions were alluding to before, there the computer was serving as merely a calculator. And in some ways it's a little like Fluke, calculating an alarm limit, calculating an asset value. If that's all it's doing is doing the calculations. But didn't the claims in those cases actually recite a computer? Your claims don't, if we get even a little bit more basic, your claims don't recite a computer at all. And your specification calls this a software, not a computer system. The word computer does not appear in the claims. I don't really think there's any dispute that this is a computer-based system. The district court said as much. Guidewire's briefs have said as much. There is no way that this system operates without a computer. The district court said that the claims folder was an electronic claims folder. The databases are electronic databases. The client server architecture is something that's found in a computer architecture. The client is, for example, a PC. The server has specific modules, task engine, event processor. I don't really think this has any application other than to be executed on a computer. Now, it's written in terms of a computer software. In fact, there are 100 columns of description, very detailed description, of the complex programming that is required to operate this system. And I think that's also an indication that this is not merely covering an abstract idea. This is, as I said, an industry. Let's go back to the claims, though, because I think that in a situation like this where we're looking at the invention as abstract, then we look at the claims. And the claims don't cite a computer at all. Doesn't that beg the question, well, can this be done without a computer? Your Honor, I will agree the word computer does not appear. But there are five machines at least, right? There are. There's a database, a library database, a server, an event processor, and a task engine. I agree. And those can be nothing but software running on a computer, which is a new machine. And a task engine, for example, is a new type of machine, or an event processor is a new type of machine. It doesn't say computer. I was in the insurance business at one time, not as a lawyer. And some of these components that you call, you know, I could picture a person sitting there. You've got your claims manager. You've got your claims processor. You have an individual who devises a to-do list based on a review of a claim. And they all go into a big old metal filing cabinet. You pull it out once in a while when your calendar pops up and says it's time to write a report or to review whether the police report came in. That's a very good analysis perhaps for obviousness, isn't it? But that's not what we're talking about. We're talking about abstractness. And if anything, that's making it rather concrete, isn't it? I think by comparison to what was done by a human, this is very concrete, and it is an actual machine. It makes the processing more efficient. If it's done by a human, how can it be an invention? It's just an abstract idea that can be processed in the human mind. Well, I don't think there's anything in this claim that can be done solely in the human mind. And I don't think there's really any dispute about that. The district court found that this was a computer-based system. I think GuideWire has said that themselves. I don't know how a human is triggered by an event processor. This is a computer structure. How about an email? Well, that's not really the same thing, and that's not what the claims call for. These are software modules running on a machine, and I think the specification would make that very clear. Hasn't GuideWire admitted this is a computerized system? They have in their briefs, yes, and the district court so found. So we have a component-based system that I think clearly passes any definition of abstractness. I don't even think it's close to the line. We have a real industry. This is a technological improvement in software industry. It passes the machine test. It is a machine. I think the CLS Bank case, one of the things it does say is that computer-running software is a machine. I know that doesn't answer the question, but the district judge said it didn't pass the machine test, and I think that's where the district court at least was led astray. The district court was also told that Allopath had been abrogated and that the concept of software being run on a general-purpose computer was no longer patent eligible. I think that's wrong, and what this case is at the heart. Are there no other questions? I'll save the rest of my time. Thank you, Mr. Jake. Mr. Lemley. If this is abstract, is software eligible for patenting? Yes, Your Honor. Tell me why other software's claims would not be ineligible if this is ineligible. Simply, Your Honor, the patent claims here, as interpreted in claim construction, are not limited to any particular piece of software. While there are a bunch of things that Mr. Jake's pointed to in the claim language that look like they might seem like machines, in every case when you look at the claim construction, library database, server, event processor, task engine. Absolutely. So event processor is defined in the claim construction, Your Honor, as a feature that announces an event to the task engine. Task engine is defined in the claim construction as a feature that generates the tasks that need to be performed. So, too, with task library, task assistant, these are not machines. These aren't even software. These are functions. Now, Mr. Jake has four patent applications, four patents that came out of the same basic application. Some of those patents have very narrow and specific algorithmic But you said it was a computerized system. There's no question that it's a machine and there's machines that are underway. If this is ineligible, why isn't all software ineligible? Simply, Your Honor, This is more specific than most software claims I've seen. Your Honor, with respect, I think that's not correct. Why isn't it correct? Because the way they have construed the claims, the things which appear in the claim language to be specific machines, specific devices performing specific things, in fact turn out to be high-level functions. Which is what software does. It converts a machine into something that functions and it's the functions that are protected under patent law. Have you read our cases? Yes, I have, Your Honor. The copyright end of the law will protect all the expression stuff that you're attacking. The functions are what we protect in patent law. So it's well-defined and it's clearly a computerized system, as you say. No, Your Honor. No, why not? Because the functions themselves are not machines. The only machine actually recited in the patent claim is a client and a server. Absolutely. There is a client and a server system. And the question for this court is, does taking a high-level abstract idea and putting it in a general-purpose computer. The idea, Your Honor, is the idea of organizing insurance files in a computer and updating them as claim events occur. As Judge Reina suggested, insurance agents have been doing this without a computer for 150 years. That's a good obviousness analysis. What's abstract about it? The concept itself. Very concrete. We're dealing with an industry in concrete functional steps. Your Honor, if you look at the claims, there are no concrete functional steps. They are claiming the concept of doing this in terms of functional steps. But you will look in vain to find the actual steps that are being performed in some particular order. Had Mr. Jakes been defending a patent claim that actually was directed to one of the computer programs in the specification, we would have a very different case. And I wouldn't be arguing here that this was unpatentable subject matter. But this claim, as interpreted by these claim constructions, is not in fact so limited. The only hardware limitations are a client and a server. And so the question for this court is, does taking an abstract idea, the method claims have already been rejected as abstract here. What's the abstract idea? The abstract idea is organizing insurance files and updating them as claim events occur. Why is that abstract? That's business. That's concrete. Dealing with real claims and people needing compensation because of injury. That's very concrete. Your Honor, it is abstract in precisely the way the invention in Bilski was abstract. That is, that invention, too, was a very specific business concept applied in a real-world environment involving coal contracts. Nonetheless, the Supreme Court said this is an abstract idea because you're not claiming a particular machine that does it. You're not claiming a particular implementation. You're claiming the idea itself. Does the method claim, the method claim incites abstract ideas and mental steps. Is that right? Yes, Your Honor. And are these the same things? Yes, Your Honor. And the only difference That they're done by the system? Absolutely. That they're done by the client-server system. And so the question, I think, for this Court is, does adding in a computer or in a client-server system to an unpatentable method claim make it patentable? And I think Is a filing cabinet in the corner tangible? Is it tangible? Absolutely. Is the idea of processing claims using that filing cabinet patentable? Absolutely not. It's an abstract idea. If you have a specific real-world implementation, then it could be patentable. But this is not that case. Why shouldn't we hold that this is sufficiently different from the method claim and send it back for 103 analysis, since it appears that all that Claim 1 carries out used to be carried out before there were computers? Well, I think for precisely that reason, Your Honor, there's no point to do so. In Bancorp decided just two weeks ago, this Court found system and method claims directed to a computer-implemented invention for managing a life insurance policy to be invalid for lack of patentable subject matter. And this Court said the district court had correctly treated the asserted system and medium claims as no different from the asserted method claims for patent eligibility purposes, while reiterating that the form of the claims shouldn't trump basic issues of patentability. That was the argument that constituted three-quarters of Accenture's brief. System claims are different. You can't add in a computer or in a client server system and you're out of all of this method claims. That argument is no longer available. It is foreclosed by Bancorp. And I think Bancorp also says one other thing, which is of importance, which is, as the Court put it, the computer, in that case, merely permits one to manage a stable-value protected life insurance policy more efficiently than one could mentally. Using a computer to accelerate an ineligible mental process does not make that process patent eligible. And as your questions to Accenture suggested, that's precisely what's going on here. The computer does it faster, maybe the computer does it better, but the mere fact that you've taken an idea which was implemented in the offline world and put it in a general-purpose computer does not make that patent. So software is therefore ineligible. No, you're right. What it does, it reduces a variety of real-world steps down to miniature pluses and minuses and does them with automaticity, speed, reliability that no human can achieve. That's the software industry. Therefore, they're all ineligible because they're doing something that was done before. No, Your Honor. If they have to do something that was never done before, they're not eligible. You have to do it in a particular way. And if your patent claim is limited to that particular way, Your Honor, then you can have a patent. They do. That's what the software does. Your Honor, what... better, more reliably, and without error. If the patent claim were, in fact, limited to a particular implementation of the idea, it might be patentable. Here, the claim, as construed... It is. It's got an insurance database, a library database, a server. It's going through five steps of components triggered by application events, sending triggers to the task engine and back and forth. It is abstract here. The abstract comes in the definition of the claims and the claim construction. What is abstract? At extensure's request. What is abstract is a hard question, and I would agree with Mr. Jakes. There's not a clear definition. So you want us to apply this just based on your work. You don't have a standard. No, Your Honor. No, Your Honor. What I have is a series of cases from this Court and the Supreme Court which apply the abstract ideas concept. If I were to generalize it, I would say you can't have a patent on the idea alone, not limited to particular implementations. This Court has tried various formulations to narrow that down. We have a machine or transformation test. It's quite clear, I think. Describe to us how this invention is an idea alone and does not let us know how to implement that idea in a specific manner. Certainly, Your Honor. The idea is update claim information for insurance agents. There are various steps associated with this, even though it's a system claim. But when you look at the way those terms are construed, how do they do it? They do it with an event processor. Well, what's an event processor? An event processor is merely a feature that announces an event to the task engine. Not a particular feature, not a particular event. Any event, any feature that serves that purpose is within the scope of their claims. It sounds like your point is that this is too broad. Absolutely, Your Honor. And I think that's precisely. That's a 112 issue. Well, Your Honor, I think under Bilski and Mayo, it's not only a 112 issue. There is, in fact, a 112 issue here, a different one which I would like to get to in a moment. But I do think it is important to recognize that under the Supreme Court's precedent and under this Court's precedent in Bancorp and CyberSource and DealerTrack and in Fort Properties, merely attaching a computer to an idea is not sufficient. I think this is a disguise method claim comparable to a... Absolutely, Your Honor, because the things, other than the terms client and server, which are a general purpose computer system that are going to be present in any computer environment, the only things that look like they might be machines at Accenture's urging were construed not to have any machine or specific software component at all. They were any feature that performs this function, any feature that stores the rules, any feature that displays the list of tasks. Are you saying the only time the involvement of a computer in a claim like this would matter is if it dealt with something non-obvious that hadn't been done before? Or that it was limited to a specific new implementation in software. But you wouldn't do that without looking at any prior art or any secondary considerations. Or looking at any of that. You just want to say, you guess. This looks to me like it's something that... Your Honor, in fact, as we have indicated, we don't need to get to 103. There are plenty of circumstances, plenty of reasons to think this is invalid under 102 as well, and we presented that evidence to the court. But I think even if that were not true, under the Supreme Court's abstract ideas law, one of the things... Maybe we should go back and have them look at 102 and 103. Your Honor, I think there's no reason to send it back. The evidence is quite clear and specific. It would be pointless. The district court didn't think so. The district court said you gave me thousands of documents and you didn't really point me in the right direction. The district court did say that, Your Honor, although the district court asked us to refile simply identifying element by element. Accenture can't point to any element not present in the prior art system. The relevant documentation, which is before this court, consists of 18 pages. There's a testimony from the guy who invented Riskmaster, and there's the Riskmaster manual, and those are all you need to actually evaluate it. I would like to spend a little bit of time, Your Honor, on the Section 112 issue, the indefiniteness issue. The district court's grant of summary judgment can be affirmed on an alternate ground, decided in the same opinion. The critical language in Claim 1, the only independent claim, is invalid as indefinite because it recites an open Marcouche group, and such language is by definition meaningless. The language in question covers information, quote, decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level, and a line level. The question here is what plurality and comprising mean. Fortunately, they're the two most commonly defined terms in patent law. But you need all the levels, right? Well, no, Your Honor. That's the question. If you take seriously the words decomposed into a plurality of levels from the group comprising these four, all you need is one or more of two things from anything in the universe, including but not limited to those four levels. Now, Accenture originally, in its claim construction, took exactly that position. It said, this means one or more, and that's all I need. Then the district court said, oh, it means two or more from this list of four, and that's all you need. And then on reconsideration, the district court said at Accenture's newfound urging, well, we need all four and only those four. I suggest that that's not what the language of the claim says. What the language of the claim says is you need a plurality, two or more. That's pretty clearly a patent law term of interest. Selected from a group comprising, and comprising, I think, has a clear meaning, these, but not just these, anything else as well. And then it lists four examples. And the problem with that definition, and the reason that open marquoise groups are not allowed, is that I could pick anything out of the world, a box sonata, the average airspeed velocity of a swallow in flight, and put them in the list, and they would fit within the definition of comprising. They don't have to be limited to those four things. And so the words are literally meaningless. I think your example is weak in your argument. Fair enough, Your Honor. But I think it is worth noting that the language here is precisely the language that the examiner found to be allowable. The examiner rejected the argument, rejected the claim. This language was added, and then the examiner said that's the reason for allowance. And it's also worth noting that in the other parallel applications on the same specification with the same prosecutor, the same or similar language was rejected as indefinite by the examiner. And the applicant said, you're right, it is indefinite, and changed it. Here it wasn't caught. Back to the claim. Where does the processor run? I'm sorry, Your Honor? Where does the processor run? Your Honor, it can run either on the server side or on the client side of a system. And where does the triggering occur? The triggering, Your Honor, occurs in the claim language here, so I have it specifically. The event processor is triggered by application events associated with a change in information and sends an event trigger to the task engine. It does not specify whether it's client side or server side  Thank you. Thank you, Your Honor. Mr. Gates? The district court's claim construction did recite the various elements like the event processor as a feature that performs a function. It's a feature of a computer system. There's nothing wrong with that. There's nothing wrong with high level functions. There's nothing wrong with claiming broadly, as long as the prior art and the specification allow it. That is not patent eligibility. I'd like to direct your attention to the patent at column 103, page A74, where we have the definition of a task assistant. And it goes on and says that the task assistant is a cornerstone of a claim professional's working environment. It provides diary functions. And then it goes on and talks about how it's execution of best practices. And then it says a task assistant is a source of automated assistance, a mechanism for making claims, a diary application to keep track, a historical tracking tool. So it's telling me what it is, but it doesn't tell me how it does it. And especially when I get down to this particular paragraph  claim professionals have ultimate control to determine. But then it is by saying, this supports a vision of the claim professional as knowledge. Isn't a vision abstract? Your Honor, I think if you just focus on that and the task assistant and those words, you might say something like that. But the task assistant is a particular piece of software that is described here in fairly broad terms as to what it does. But the functionality is completely described there. It describes it very broadly, what it is. But does it really tell us what it does? Well, I think in describing what functions it performs, it does describe what it does. And when you're talking about software, what it does and what it is are basically the same thing. How about how it does the actual application? If that's within the skill of the art of a person who could program it, then this is enabling, and we don't need to describe any more than that. The method claim here, there's not any waiver. There are significant differences between the method claim and claim one that we have appealed. We did that to streamline the case. We thought claim one was our best issue. And if we're somehow going to be held that that is abstract and that spills over to our main claim, we'd have to appeal every claim in every case. And I don't think that's what's intended here. I commend the idea of simplification. Well, we did pick what we thought was our best claim. On the Marcouche claim, it's not a Marcouche group. That's simply it. It uses the word comprising. Marcouche group is closed. These are not functionally equivalent alternatives. All four of them are required. Guidewire has set up this syllogy that it's a Marcouche group, therefore, by being open, it's invalid. The first part is wrong. It's not a Marcouche group to start with. Thank you. The next case is House versus the United States.